# P. Louis Biegler v. Merchants Loan and Trust Co.

1. CHANCERY PRACTICE—*No Dismissal After Cross-Bill.*—Under the provisions of our statutes, a bill in chancery can not be dismissed after the filing of a cross-bill by the defendant.

2. SAME—*Complainant Estopped from Dismissing His Bill, When.*—Parties resorting to equity and inviting its administration are not permitted, after the filing of a cross-bill, which prays relief germane to the original, and after being defeated, or anticipating defeat, to retrace their steps and compel a defendant who has filed a cross-bill to again return to the court of law to prosecute the suit from which he was enjoined.

3. COURTS OF EQUITY—*Retain Jurisdiction for All Purposes.*—When a court of equity obtains jurisdiction for equitable purposes, it will retain it to give full relief, whether legal or equitable, as to all purposes relating to the subject-matter of the bill, even though it be required to give relief in matters which would not have been proper subjects of equitable interposition if they alone were the original subjects of relief.

4. PROMISSORY NOTES—*Negotiability—When Secured.*—The fact that a promissory note is secured by collaterals, does not affect its negotiability.

5. SAME—*When Recitals on, Destroy Negotiability.*—A recital upon a promissory note to destroy its negotiability must be of a kind that in some respect qualifies or makes uncertain or conditional the promise.

6. SAME—*When Not Gambling Contracts.*—The fact that a promissory note is given for an interest in a race horse does not necessarily make it a gambling contract. The statute does not prohibit the breeding or dealing in or running of race horses.

7. SAME—*Gambling Consideration—Innocent Purchaser.*—Where the parties to a promissory note, given by one to the other for an interest in race horses, contemplated at the same time entering into a partnership, which they afterward did, for, among other things, racing the horses for money, the consideration of the note was not thereby tainted to the extent of making it void in the hands of an innocent purchaser.

**Bill for Relief.**—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed February 11, 1896.

CORWIN V. HOWELL, attorney for appellant, contended that jurisdiction over the subject-matter can not be conferred upon a court by consent of the parties, nor can the want of it be waived. Leigh v. Mason, 1 Scam. 249; Bessman v. City of Peoria, 16 Ill. 484; Peak v. People, 71 Ill. 278.

It seems to be settled law in Illinois that horse racing is gaming within the meaning of the statute of the State authorizing the recovery of money lost at any gaming, or playing at cards, dice or any other game or games. Stone v. Clay, 61 Fed. Rep. 890; Tatman v. Strader, 23 Ill. 439; Mosher v. Griffin, 51 Ill. 184; Garrison v. McGregor, 51 Ill. 473; West v. Carter, 129 Ill. 249; 21 N. E. Rep. 782; Morgan v. Beaumont, 121 Mass. 7.

" The only question in this case is whether horse racing is gaming, within the provisions of our statute." The words of the statute are, " won at any gaming, or playing at cards, dice, or any other game or games." And after reviewing various authorities, the court held that the language of the statute, "any game or games," expressly included athletic and other games of muscular strife, as well as games of hazard and skill played with instruments, and that horse racing was a game within the meaning of the statute.

To the same effect are the decisions in Garrison v. McGregor, 51 Ill. 473; Richardson v. Kelly, 85 Ill. 491; Schaffner v. Pinchback, 133 Ill. 410; Mosher v. Griffin, 51 Ill. 184.

This court is committed by a long line of decisions to the position that horse racing is a game, within the meaning of our statutes. Swigart v. The People, 154 Ill. 284.

Where the intent of the parties is for a contract which the law regards as a gaming contract, it is invalid whatever its form. Beveridge v. Hewitt, 8 Ill. App. 467; Colderwood v. McCrea, 11 Ill. App. 543; Carroll v. Holmes, 24 Ill. App. 453.

Equity will not lend its aid in a division of profits in an illegal transaction between associates. Craft v. McConoughy, 79 Ill. 346; Neustadt v. Hall, 58 Ill. 172; Skeele v. Phillips, 54 Ill. 309; Jerome v. Bigelow, 66 Ill. 452.

When a party is about to receive a bill or note, if there are any such suspicious circumstances attending the transaction or within the knowledge of the party as would induce a prudent man to inquire into the title of the holder, or the consideration of the paper, he shall be bound to make such inquiry; or, if he neglects to do so, he shall hold the

bill or note subject to any equities which may exist between the previous parties to it. In other words, he shall act in good faith, and not willfully remain ignorant when it was his duty to inquire into the circumstances and know the facts. Russell v. Hadduck, 8 Ill. 233; Sturges' Sons v. The Metropolitan National Bank of New York, for the use of, etc., 49 Ill. 220; Weber v. Rosenheim, 37 Ill. App. 72.

Any memorandum designed to control the operation of a note written on any part of its face will constitute a part of it, and in construing the legal effect and determining the character of the instrument, such memorandum must be considered in connection with the rest of the writing. Hopkins v. Van Zandt, 40 Ill. App. 635.

Where the matter of which express notice is proved is merely a circumstance collateral to the main 'fact, with notice of which it is sought to charge the party, the collateral circumstance, if sufficient to put him on inquiry leading to the truth, will, in general, be regarded as good notice of the ultimate fact to be established. Prins v. South Branch Lumber Co., 20 Ill. App. 236; Wiggins v. Bush, 12 Jones' Rep. 306.

What appellee could have learned by inquiry is of the same effect as if it was stipulated at large on the face of the note itself. Frink v. Ryan, 3 Scam. 322; Prins v. South Branch Lumber Co., 20 Ill. App. 226.

A note delivered upon a condition upon which the obligation of the maker to pay it depends, can not be the subject of a *bona fide* purchase by any one having knowledge of the facts, and there can be no recovery upon it until the condition is performed. Blaine First National Bank v. Blake, 60 Fed. Rep. 78.

Where a party willfully closes his eyes against the lights to which his attention has been directed, and which, if followed, would have led to a knowledge of all the facts, he will be chargeable with notice of every fact that he could have obtained by the exercise of reasonable diligence. Babcock et al. v. Lisk, 57 Ill. 327.

RICH & STONE, attorneys for appellee, contended that

where a court of chancery has rightful jurisdiction for one purpose, it retains it for all legitimate purposes. Albrecht v. Lumber Co., 126 Ind. 318; Mitchell v. Shortt, 113 Ill. 251; Robinson v. Appleton, 124 Ill. 276; Hurde v. Ascherman, 117 Ill. 501; Pratt v. Kendig, 128 Ill. 293; Hawley v. Watterson, 19 S. E. Rep. 526; Grand Tower & C. G. R. Co. v. Walton, 37 N. E. Rep. 920.

When a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes and proceed to a final determination of all the matters at issue, for this reason: that if the controversy contains any equitable feature or requires any purely equitable relief, which would belong to the exclusive jurisdiction or involve any matter pertaining to the concurrent jurisdiction, by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court may go on to a complete adjudication, and may thus establish purely legal remedies, which would otherwise be beyond the scope of its authority. Stickney v. Goudy, 132 Ill. 213; Disher v. Disher (Neb.), 63 N. W. 368; Hathaway v. Hagan, 24 Atl. Rep. 131; Tuesma v. Schuttler, 114 Ill. 164.

The mere fact that the consideration for which a promissory note is given is recited in it, although it may appear thereby that it was given for and in consideration of an executory contract or promise on the part of the payee, will not destroy the negotiability of the note, unless it appears through the recital that it qualifies the promise to pay and renders it conditional or uncertain, either as to the time of payment or the sum to be paid. Siegel v. Chicago Trust & Savings Bank, 131 Ill. 569.

A collateral contemporaneous agreement providing that the notes shall not be paid if an executory contract forming the consideration of the note is not performed, will not affect the validity of the notes in the hands of an indorsee, taking it with notice of the agreement, if without notice of the breach thereof. Jennings v. Todd, 84 S. W. Rep. 148.

Knowledge on the part of the holder at the time he took the note that it was not to be paid on the specific contin-

gency is not sufficient to defeat his right to recover, although the fact had then happened, if he was ignorant of this fact. Parsons on Notes and Bills, Vol. 1, page 261; Daniel's Negotiable Instruments, Sec. 136; Miller v. Ottawa, 81 Mich. 196; Adams v. Smith, 35 Maine 32; Dow v. Tuthill, 4 Mass. 414; Davis v. McCrady, 17 N. Y. 230; Patten v. Gleason, 106 Mass. 439.

Mere recital of the consideration is not notice of defect or failure in it. Henneberry v. Morse, 56 Ill. 394; Bank of Commerce v. Barrett, 38 Ga. 126; Splivallo v. Patten, 38 Cal. 138.

If the purchaser knows that the note was given for a certain consideration with a warranty, his knowledge of the breach of the warranty or failure of consideration will not be presumed. 1 Daniel, 740.

The consideration of negotiable paper in the hands of a *bona fide* holder for value, can not be inquired into, though he had notice of the facts which should have put him on inquiry. Jennings v. Todd, 24 S. W. 148; Merchants Nat'l Bank v. McNeil, 51 Minn. 123; Brothers v. Bank of Kankanna, 84 Wis. 381; Merrill v. Hale, 85 Iowa 66.

Taking a note as collateral security for advances made at the time, is sufficient consideration to make the purchaser the holder for value and in good faith, and taking a bill or notes as collateral, amounts to purchase of it in the ordinary course of business. Randolph, Vol. 2, page 684, Sec. 993.

A note is not rendered unnegotiable because it imports that collateral security has been given. Byles on Bills, 101, and cases cited.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

Pursuant to previous negotiations the appellant purchased of George W. Leihy & Son a one-third interest in nine certain race horses and certain racing equipments, and agreed to pay therefor the sum of $13,500, of which $6,000 was paid in cash and the remaining $7,500 was evidenced by two promissory notes made by the appellant.

Those notes, with ·indorsements thereon, were as follows:

" $3,750.                                       CHICAGO, Jany. 15, 1894.

Five months after date, for value received, I promise to pay to the order of G. W. Leihy & Son the sum of thirty-seven hundred and fifty dollars, at my office in Chicago, with interest at the rate of six per cent per annum after date.

P. LOUIS BIEGLER,
379 N. Clark St.

(Indorsed:)

This note is secured by a lien upon my interest in certain horses named in an agreement this day made between said G. W. Leihy & Son and myself.

Chicago, January 15, 1894.

P. LOUIS BIEGLER."

" $3,750.                                       CHICAGO, Jany. 15, 1894.

Six months after date, for value received, I promise to pay to the order of G. W. Leihy & Son the sum of thirty-seven hundred and fifty dollars, at my office in Chicago, with interest at the rate of six per cent per annum after date.

P. LOUIS BIEGLER,
379 N. Clark St.

(Indorsed:)

This note is secured by a lien upon my interest in certain horses described in an agreement this day made between G. W. Leihy and myself, dated January 15, 1894.

P. LOUIS BIEGLER."

A partnership agreement in writing, bearing the same date of the notes, was entered into between appellant and the Leihys, and it is contended that a verbal agreement was made between them at the same time, whereby, if the appellant should desire at any time thereafter to withdraw from the partnership, he should lose the $6,000 cash paid by him, give up his interest in the horses, and receive back the said two notes, and that the indorsement on the notes had reference to such verbal agreement, and was, as well, notice of what the partnership agreement contained, and put

any person dealing with the notes upon inquiry as to what that agreement was.

On January 30, 1894, the six months note was deposited by Leihy & Son with the Merchants Loan and Trust Company, the appellee, as collateral security to an indebtedness of $3,000, then owing by them to said bank, and, on May 7, 1894, the said bank discounted for Leihy & Son, in its regular course of business, the other note due at five months.

The notes were not paid at maturity, and on December 1, 1894, the appellee sued the appellant on them, at law.

In the meantime the appellant had filed a bill in equity against the Leihys, which was pending, and about the time the suits on the notes were to be reached for trial, the appellant filed a supplemental bill in the equity case, and made appellee a party defendant with the Leihys, and set up various equitable defenses to the notes, and prayed for an accounting, that said notes be surrendered and given up to him, and for an injunction against the further prosecution of the suits on the notes, and obtained an injunction restraining appellant from further prosecuting said suits.

Appellee answered said supplemental bill, and filed its cross-bill, denying that any equitable defenses existed against the notes as between appellant and the Leihys, the payees thereof, and insisting that if any such equitable defenses did exist as between the maker and payees thereof, that such defenses were unavailing against cross-complainant, the appellee, under the circumstances of acquiring them as set forth in the said cross-bill, and praying that appellant be decreed to pay the amount due on the notes.

In his answer to said cross-bill the appellee admitted as follows:

"That his counsel and the counsel for said cross-complainant agreed in open court, at the time that the said injunction was granted as aforesaid, that all questions in contention and controversy arising between this defendant and said cross-complainant and said Leihy & Son upon the said notes of this defendant, as in the said cross-bill of complaint

set forth, should be submitted and determined upon a hearing of the original bill and supplemental bill in this cause, and that if it was found that this defendant was indebted to said cross-complainant, that it should be decreed in this cause that he pay to said cross-complainant whatever sum should appear upon an accounting to be justly due from this defendant to said cross-complainant upon said two notes or either of them."

The cause was referred to a master, who found and reported, among other things, that the appellee received the notes without notice of any of the equitable defenses against them claimed by the appellant, and that there was due to appellee the sum of $4,045 on the note that it discounted, and $2,068.83 on the indebtedness that the other note was pledged as collateral to.

The cause coming on to be heard upon exceptions filed by the appellant, to the master's report, it was ordered, on motion of appellant's solicitor, that the original bill and supplemental bill of appellant be dismissed as to the Leihys, and thereupon, on the court's own motion, the cross-bill of appellee, and the supplemental bill as to it, were also dismissed.

Subsequently, on motion of appellee, the court set aside its order dismissing the original and supplemental bill, as to appellee, and also appellee's cross-bill, and entered a decree confirming the master's report in respect to the allegations of the cross-bill, and that appellee, said cross-complainant, have and recover from appellant the sum so found due by the master, together with lawful interest from the date of the report, and ordered execution therefor.

It is from such decree that this appeal is prosecuted.

It is contended by the appellant that he having dismissed his original and supplemental bill as against the Leihys, the court properly dismissed the same as to the appellee, and also appellee's cross-bill, and that it was error to vacate such order of dismissal.

The allegations and theory of the original and supplemental bills were, that upon an accounting there would be

found to be nothing due from appellant on said notes, as between himself and the Leihys, and that owing to existing equities between himself and the Leihys, who were the payees of the notes, of which the appellee had notice, and advantage of which appellant could not have in the suits at law brought by appellee against him upon the notes, he was entitled to an injunction against the prosecution of said suits at law, and it was upon such allegations that he obtained his injunction.

The cross-bill that was filed by appellee was clearly germane to the issues raised by the original and supplemental bills, and while appellant had the right to dismiss his original and supplemental bills as against the Leihys, jurisdiction by the court to retain the same as to appellee was not thereby lost, and it was error for the court to dismiss them and appellee's cross-bill, as was done. It being error to dismiss them, it was proper for the court to vacate its order of dismissal and reinstate them, and to proceed to a decree upon the merits of the cause as between appellant and appellee.

We say this without reference to the stipulation entered into by the parties, as admitted by appellant, for it need not be argued that consent can not confer jurisdiction. Jurisdiction was acquired under the original and supplemental bills filed by appellant, and, under the provisions of our statute, they could not be dismissed as against the appellee, who had filed its cross-bill, without its consent; and jurisdiction having been thus acquired, it was proper that it should be retained for the determination and settlement of all the equities between the parties in relation to the subject-matter of the suit. Parties resorting to equity and inviting its administration, are not permitted, after the filing of a cross-bill which prays for relief germane to the original suit, and after being defeated in equity or anticipating defeat there, to retrace their steps, and compel the defendant, who has filed his cross-bill, to again return to the court of law, from proceeding in which he had been enjoined.

True, the appellant, by dismissing his bills as to the Leihys,

who were the only defendants thereto except the appellee, was left with the appellee as his only adversary as to matters which doubtless might have been tried at law, but the appellant had brought the appellee into a court of equity, under his bills setting up facts that gave a court of equity jurisdiction, and the equity court having thereby acquired jurisdiction for all equitable purposes, retained it to give full relief, whether legal or equitable, as to all purposes relating to the subject-matter of the bills, although it so happened that at last it gave relief only as to matters which would not have been proper subjects of equitable interposition if they alone were the original subjects of relief.    Stickney v. Goudy, 132 Ill. 213.

The master found that the appellee took the notes in due course of business, for a valuable consideration, and without notice of any equities against them, and the decree followed the report of the master.

An examination of the evidence satisfies us of the correctness of such finding.

The recital by indorsement on the notes that they were secured by a lien upon the maker's interest in certain horses described in a specified agreement, had no effect to put the appellee upon inquiry as to the terms of that agreement.

The fact, if true, that the notes were secured as recited, did not affect their negotiability.    Byles on Bills, 101.

A recital upon a promissory note, to destroy its negotiability, must be of a kind that in some respect qualifies, or makes uncertain, or conditional, the promise.    Siegel v. Chicago T. & S. Bank. 131 Ill. 569.

The further contention is urged, that the notes were given for a gaming consideration, and therefore, by force of the statute, were void in the hands, even, of an innocent holder for value.

The notes were given for an interest in race horses, it is true, but that a race horse may be the subject of a valid contract of purchase and sale, as much so as a mule or an ox, is, we think, not open to dispute in the absence of statutory prohibition.

The statute nowhere prohibits the breeding, or dealing in, or running of, race horses.

And we do not think, although it was contemplated between the parties when the notes were made, that they should, as they did, enter into a partnership agreement for, among other things, racing for money the very same horses for an interest in which the notes were given, that the consideration of the notes was thereby tainted to the extent of making them void in the hands of an innocent holder.

The partnership articles make no mention whatever of the notes, but open with a recital that the two Leihys and appellant are each owners of a one-third interest in the horses, naming them, and then proceed with stipulations as to the racing of them, and the buying and selling of other horses, etc., and the management of the outfit.

The notes did not pay for, or represent, in any way, an interest in any moneys won or staked on racing, or on any other uncertain and gambling event or circumstance, but were given only for horses and their equipment. In a sense they were given for something, horses, to be used in racing for money, but so might it be said of the purchase of boots for a jockey, of the hiring of men to construct a race track, or of carpenters to erect a judge's stand, and, therefore, in aid of gaming. But we do not feel strongly constrained to declare such contracts to be void.

It would be going beyond anything that the legislature has ever done with reference to contracts and negotiable paper to hold these notes void, and except by statutory enactment there could be no pretense of the invalidity of such instruments as the notes in question.

We do not consider it necessary to discuss other points argued in behalf of appellant.

The main questions that the notes were negotiable and were acquired by appellee in the regular course of its banking business, for value, and without notice of any of the alleged equities against them, the jurisdiction of the court of equity to give judgment upon the notes, and that the notes are not tainted with a prohibited consideration so as

to render them void in the hands of appellee, being deter-
mined adversely to the appellant, it remains only necessary
to say that we discover no substantial error in the record,
and to affirm the decree of the Circuit Court, which is ac-
cordingly done.   Affirmed.