Gunter, J.
Appellant sued upon this note:
“$6,707.91. Aspen, Colorado, March 7,1894.
“On demand, after date, we promise to pay to the order of The Famous Mining, Tunnel and Improvement Company Six Thousand Seven Hundred and Seven 91-100 Dollars, with interest at the rate of one per cent, per month until paid, and.....per cent, attorney’s fees if not paid at maturity.
“This note is secured by quitclaim deed of this date.
“Value received.
*454 “The St. Joe and Mineral Farin'Consolidated Mining Company,
[seal.] “B. Clark Wheeler, President.
“Attest: E. W. Young, Secretary.
**********
“The Famous Mining, Tunnel and Improvement Co.
“B. Clark Wheeler, Manager.
“B. Clark Wheeler.”
From a verdict and judgment thereon for defendant is this appeal.
The facts are: March 7, 1894, Wheeler executed and delivered this deed:
“Know all men by these presents that I, B. Clark Wheeler * * * have sold and do hereby sell, convey and quitclaim to The St. Joe and Mineral Farm Consolidated Mining Company all my interest in the following described .property (here follows description of real estate situate in Pitkin county, state of Colorado). And I do hereby transfer and assign any . * * * interest that I may have in and to a certain lease and the options and agreements named in a certain lease bearing date October 18, 1888, * * * . in consideration of one dollar in hand paid, the receipt whereof is hereby acknowledged, and the further consideration that the said company shall pay to The Famous Mining, Tunnel and Improvement Company, as the money is received from the sale of ores, the sum of six thousand seven hundred and ninety-one hundredths ($6,707.91) dollars, with interest at one per cent, per month from date until paid * * * .
‘ ‘ In witness whereof I have hereunto set my hand and seal this 7th day of March, A. D. 1894.
“B. Clark Wheeler.”
‘ ‘ Recorded March 8, 1894. ’ ’
March 21, 1894, the board of directors of the St. Joe company passed this resolution: “At a called meeting of the board of directors of the St. Joe and *455 Mineral Farm Consolidated Mining Company, held at the office of the company * •* * there were present * * * the following resolution was then offered * * * Whereas, by resolution of the board of directors of this company it was required of B. Clark Wheeler that he obtain title of the parties holding interests * * * and convey the same to this company, and Whereas, he has obtained interests of the following named gentlemen * * * and has conveyed the same to this company with the provision that the company shall pay from the proceeds of the mine to The Famous Mining, Tunnel and Improvement Company the sum of $6,707.91, being the balance of the amount paid for interests, with interest to date of transfer to the company at twelve per cent, per annum; it is therefore ordered that the president and secretary of this company shall execute to said The Famous Mining, Tunnel and Improvement Company the company’s note payable on demand, with interest at one per cent, per month, said note to be dated the day of said transfer in compliance with the conditions of said conveyance and that the president and treasurer are hereby authorized to pay on said note sums received from the sale of ore as fast as practicable, after paying the running expenses of the company.
“On motion the resolution was unanimously adopted.
“Approved March 22, 1894.
“B. Clark Wheeler, President.
“Attest, E. W. Young, Secretary.”
The note in suit was executed and delivered. Payments by check aggregating $2,487-88, made at eight distinct dates beginning March 17, 1894, and ending May 11 same year, were endorsed on the note prior to its purchase by appellant.
May 14, 1894,- the following contract was máde *456 between the directors of the St. Joe company, B. Clark Wheeler, and S. L. Hansbrough: “This contract and agreement made and entered into this 14th day of May, A. D. 1894, by and between The St. Joe and Mineral Farm Consolidated Mining Company, * * * of the first part, B. Clark Wheeler, as joint agent for S. L. Hansbrough and the said company, and S. L. Hansbrough, parties of the second part, and T. Gr. Lyster, party Of the third part:
“Witnesseth: That, whereas, the said party of the first part is indebted to the said party of the third part upon the promissory note of said party of the first part, dated May 10,1892, to The Continental Divide Mining Investment Company, for the sum of forty thousand dollars, * * *
“And whereas, the said party of the first part, by its certain indenture of lease dated the 22nd day of July, 1893, did grant, demise and let unto the said S. L. Hansbrough, one of the parties of the second part hereto, that certain portion of the mining property of the said party of the first part, known as the Mineral Farm, to have and to hold to the said S. L. Hansbrough for the period of thirty months from the date of the said lease, upon the payment by the said lessee of certain royalties and the performance of certain covenants in the said lease set out, * * *
“And whereas, the said party of the first part is also indebted to The Famous Mining Tunnel and Improvement Company, a corporation organized and existing under and by virtue of the laws of the state of Colorado, upon a certain promissory note made by the said party of the first part to the said Famous Mining, Tunnel and Improvement Company, dated March 7, 1894, for the sum of $6,707.91, with interest at the rate of one per cent per month, and the party of the first part being desirous of paying and satisfying its said indebtedness above recited, and this *457 contract having been duly authorized by resolution of the board of directors of the said party of the first part, passed and approved on the 14th day of May, 1894, * * *
“Now, therefore, these presents witness: That the said party of the first part, in consideration of the premises, and in the further consideration of the sum of $1 to the said party of the first part in hand paid by the said party of the third part, the receipt whereof is hereby confessed and acknowledged, has assigned, transferred, and set over, and does, by these presents, sell, assign, transfer and set over unto the said party of the third part, or his assigns, all royalties due or to become due to the said party of the first part from the said S. L. Hansbrough, one of the parties of the second part, * * *.
“And the said B. Clark Wheeler, one of the parties of the second part, as joint agent of the said party of the first part and the said S. L. Hansbrough one of the parties of the second part hereto shall pay and deliver to the said party of the third part any and all such royalties accruing under said lease * * *.
“And the said party of the third part doth hereby agree to apply the said royalties so to be received by him as follows: (Then after enumerating three different dispositions to be made of the royalties so received provides a fourth.)
“4th. The remainder of said balance, to wit, ten per cent thereof, he shall pay to the holder of said note of the party of the first part to the said Famous Mining, Tunnel and Improvement Company, until the same shall be paid, or until the termination of the said lease * * * ”
June 11,1894, appellant purchased this note paying value therefor without actual notice of the above quitclaim deed of March 7; without actual notice of the resolution of the board of directors above men *458 tioned of March 21, and without any intimation of the claim that the note was conditional, but did have actual knowledge of the above payments made upon the note, up to, and including, the payment of May 11, 1894, and of the resolution of the directors just recited, of May 14,1894, whereby it was distinctly recited that the note in question was an unconditional and existing obligation of the company, and whereby provision was made for payments tó be applied on said note.
The Mineral Farm Consolidated Mining Company is the successor by consolidation under the statute to The St. Joe and Mineral Farm Consolidated Mining Company, hence its being the defendant herein.
February, 1895, appellee brought suit against B. Clark Wheeler, who gave the note here sued on, in the name of The St. Joe and Mineral Farm Consolidated Mining Company for an accounting between it and said Wheeler, and took judgment against him for the amount of this note upon the basis that it was an existing obligation of The St. Joe and Mineral Farm Consolidated Mining Company.
There is no substantial conflict in the testimony, the case rests upon the above facts.
Appellee contends that the' judgment below should stand, because the note sued on is a conditional contract. Such contention is that the note in suit should be construed in connection with the above quitclaim deed, and that so construed its payment is made dependent upon realizing from the sale of ore funds Sufficient for such purpose; that the satisfaction of such condition was not shown, and could not be shown utíder the pleadings.
•It is further contended that appellant had constructive notice of the quitclaim deed and the alleged condition through the memorandum upon the face of *459 the note, “This note is secured by quitclaim deed of this date.” It is further contended that appellant was charged with notice of such alleged condition in the quitclaim deed by the note having been endorsed after maturity.
The quitclaim deed imposes no limitation on the note in suit because it was competent for the St. Joe Company, notwithstanding the agreement between it and Wheeler embodied in such quitclaim deed to give The Famous Mining, Tunnel and Improvement Company an unconditional demand note to cover the amount stated in the deed as payable to such company. If the company saw fit to give such note, the payee company to receive it, and it was so received, and Wheeler did not object, it is not now competent for the payor company to complain that the note does not follow the terms provided in the Wheeler quitclaim deed. Such note was so given, and without objection so received. Knowledge, therefore, by appellant of the quitclaim deed would not have charged him with notice of a limitation upon the note. Again, by the proceedings of the board of directors on May 14, of which this appellant had notice, it was distinctly recognized that the note in suit was an unconditional obligation of the original payor. After such recognition of the note by payor, and the taking of the note by appellant for value, believing the same to be an unconditional obligation, the payor cannot be heard to say that the note was different from what it proclaimed it to be, to wit, an unconditional obligation of the company. Again, the note was recognized as an unconditional obligation of the company by the contract of June 7, 1894, between Hagerman, Bolles and Wheeler, which contract by acting under it the company ratified. Further, the suit begun in 1895, whereby judgment was taken against Wheeler upon the theory that this note was an existing obligation *460 of the company was a ratification of the making of this note as an unconditional obligation of the company. But even assuming that as between the original parties the quitclaim deed placed a limitation on the note, this appellant had no notice of such limitation. The mere notation upon the face of the rote, “This note is secured by quitclaim deed of this date” did not affect the negotiable character of the note. The note as it appeared was an unconditional promise to pay a definite amount on demand with no suggestion upon its face that these unequivocal terms were modified by any other instrument. The memorandum simply advised that as an incident to the note, given for the purpose of securing it, and for no other purpose, there was a quitclaim deed. There was no suggestion in this notation of an intention of .the parties to restrict the unconditional terms of the note by the quitclaim deed. That this notation did not charge appellant with notice of the terms of the quitclaim deed is fully sustained by the authorities.
In Howry v. Eppinger, 12 Mich. 29, suit was by an endorsee upon a promissory note; on the margin thereof was written, ‘ ‘ Secured by mortgage. ’ ’ It was contended that the endorsee was charged with notice of the contents of such mortgage, and that such mortgage contained a condition fatal to recovery. The court said, ‘ ‘ The words ‘ secured by mortgage ’ formed no part of the notes. The object and intent of the parties in putting these words upon the notes was not to limit or impair their value, but to add to it. It was not to notify third parties that the mortgage contained some clause inconsistent with the notes, and which would destroy or affect their negotiable character. * * * But the principal one (object) was to show that in addition to the responsibility of the makers they were also secured by mortgage. If the makers intended to limit the effect of the notes by the *461 terms or conditions of the mortgage securing their payment, they should have done so by language which would admit of no doubt as to its intent and meaning. We think these words were neither sufficient to inform third parties of the contents or terms of the mortgage, or to put them upon inquiry. * * * It is not the duty of parties about to purchase negotiable paper to make inquiries as to possible defenses, unless either from something appearing upon the face of the paper, or from facts communicated' to them at the time, they could not honestly purchase without making further inquiry, in other words, that they acted in bad faith. ” — See also St. Joe and Mineral Farm Company v. The First National Bank, 10 Colo. App. 348, 50 Pac. 1055.
In Biegler v. Merchants Loan & Trust Co., 62 Ill. App. 560, it is said: ‘‘The recital by indorsement on the notes that they were secured by a lien upon the maker’s interest in certain horses described in a specified agreement, had no effect to put the appellee upon inquiry as to the terms of that agreement. * * * A recital upon a promissory note, to destroy its negotiability, must be of a kind that in some respect qualifies, or makes uncertain, or conditional, the promise.” — See also 4th Am. and Eng. Ency. of Law, 2d ed., 141-142.
It is further contended that the mere fact that the note in suit had been outstanding from March 7, 1894, to June 11, 1894, the date of its endorsement to appellant, stamped it as dishonored, and that such fact would let in any defense that could have been urged as between the original parties to the instrument. The authorities are agreed that a demand note falls due within a reasonable time after its making. What is a reasonable time depends upon all the facts and circumstances surrounding the running of such time. If the length of time the note had been out *462 standing, taken in connection with, all the other facts and circumstances, would justify a reasonable presumption in the mind of the endorsee at the time of the endorsement that payment upon the note had been refused, or would be refused if demand were made, then the endorsee takes the note as dishonored, otherwise not.
“The demand must be made in a reasonable time, and that will depend upon the circumstances of the case, and the situation of the parties.”—Losee v. Dunkin, 7 Johnson’s Reports 69.
In this case the facts were not such as to raise a reasonable presumption that this note at the time it was received by appellant was a dishonored note. The circumstances strongly indicated that it was the intention of the St. Joe company as successor of the original payor to pay the note in full, and that it had no defense to interpose to its nonpayment. A large amount had been paid upon the note, and the last payment was but a few days before its purchase by appellant. Further, but a few days before its purchase by appellant, appellee’s liability upon the note, by the resolution of May 14, 1894, was recognized as unconditional and provision made for its payment.
When summed up the evidence disclosed plaintiff in possession, as owner, of the unconditional promissory note of the St. Joe company, executed by its president, attested by the signature of its secretary, and corporate seal. There was no evidence to impair this prima facie case. Upon the evidence as adduced the trial court should have instructed a verdict for plaintiff.
Judgment will be reversed.

Reversed.