## American Guaranty Company, Appellant, v. State Bank of East Lynn, Appellee.

### Gen. No. 8,016.

1. CORPORATIONS—*when allegations as to doing business in State are mere conclusions.* Averments in the plea that plaintiff, a foreign corporation, was engaged in doing business in this State, and that the cause of action arose out of business being done in this State, are mere conclusions.

2. CORPORATIONS—*how statute relative to certificates to foreign corporations construed.* The omission of the words ''amenable to the provisions of this act'' from Cahill's St. ch. 32, ¶ 94, which appeared in the former corresponding law, does not make this act, which penalizes foreign corporations without certificates from the State secretary and prohibits their entrance into courts of this State, apply to all foreign corporations including those exempted by Cahill's St. ch. 32, ¶ 80.

3. STATUTES—*how revisions construed.* Unless the legislature makes clear its contrary intent, it is presumed in revising an act to have in mind the prior act's judicial construction which takes into consideration the intent of the lawmakers in passing a law and the meaning of the whole act rather than of separate sections.

4. CORPORATIONS—*intent of statute as to certificates to foreign corporations.* The legislature in omitting from the 1919 revision of the former Corporation Act the words ''amenable to the provisions of this act'' in Cahill's St. ch. 32, ¶ 94, barring actions by corporations not possessing a certificate of authority from the secretary of State, intended to avoid the absurdity of forbidding the courts to all corporations within the scope of the revised Corporation Act, some of which are under the jurisdiction of other branches of the State government.

5. CORPORATIONS—*when certificate of authority not a prerequisite to action by a foreign corporation.* A foreign guaranty company is not barred from maintaining an action in this State under Cahill's St. ch.

American Guaranty Co. v. State Bank of East Lynn, 244 Ill. App. 16.

32, ¶ 94, because it had not obtained a certificate of authority from the secretary of State, as under Cahill's St. ch. 32, ¶ 80, such companies are expressly exempted from the necessity of obtaining such certificates.

6. CORPORATIONS—*when plea insufficient to set up want of authority to do business in State.*  A plea seeking to bar action by a foreign corporation on the ground that it had not obtained a certificate of authority from the secretary of State as required by Cahill's St. ch. 32, ¶ 94, which does not allege that such corporation was organized for pecuniary profit, or that it was doing business under its charter powers is insufficient, since it may be doing business in the State under a law which does not require a license as a condition to doing business in the State.

7. NEGOTIABLE INSTRUMENTS—*who are holders in due course.*  One who takes as payee a certificate of deposit in return for cash, without notice of any defect in the issuance, is a holder in due course under Cahill's St. ch. 98, ¶¶ 46, 49, 72 and 213.

8. CORPORATIONS—*when notice to officer not notice to corporation.*  Notice to an officer of a corporation is not notice to the corporation in transactions where the officer is dealing with the corporation in his own interest and not in the interest of the corporation.

9. CORPORATIONS—*when not bound by notice to officer.*  An agreement of the president of a guaranty company and a bank that the latter should issue a certificate of deposit to his company as an accommodation for which the bank was to hold his own note, and on which certificate he received the cash from his company, was done for his benefit contrary to the interest of his company and was not such notice of defect in the certificate to the company, as to destroy its remedy to collect thereon as a holder in due course.

Appeal by plaintiff from the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding.  Heard in this court at the October term, 1926.  Reversed and remanded with directions.  Opinion filed February 28, 1927.  Rehearing denied April 12, 1927.

GILLESPIE & GILLESPIE, for appellant; WILLIAMS, SINKS, GEARHEART & WILLIAMS, REARICK & MEEKS and HUGH J. DOBBS, of counsel.

ACTON, ACTON & SNYDER, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

Appellant, a corporation of the State of Ohio, filed its suit in the Vermilion county circuit court to recover from appellee the amount of a certificate of deposit issued by appellee in the following terms:

"State Bank of East Lynn

Certificate of                                     No. 213
Deposit.                                        $3500.00

"East Lynn, Ill., June 1st, 1923.

"American Guaranty Company has deposited in this bank thirty-five hundred and no/100 dollars, payable to the order of themselves, to draw 4 per cent interest to January 1st, 1924, on the return of this certificate properly endorsed.

F. P. McCord,
Not subject                          Cashier.
to check."

There was an additional count to the declaration in trespass, on the case on promises, that on June 1, 1923, at Columbus, Ohio, in consideration of the surrender by appellant of a certificate of deposit of like sum, then held by appellant, theretofore issued to appellant by appellee, appellee then and there paid appellant the sum of $70 interest on said former certificate, and delivered to said appellant, by United States mail, at Columbus, Ohio, a certificate of deposit, in the words and figures as set out.

Appellee's amended first additional plea in sub stance averred that appellant was a foreign corporation, organized and incorporated under the laws of the State of Ohio; that appellant, prior to the bringing of this action, was engaged in doing business in the State of Illinois; that the cause of action sued upon is an alleged promise of appellee to pay to appellant certain moneys claimed to be due to appellant from appellee for and by reason of a certain transaction arising out of and being a part of the business of appellant then and there being done in the State of Illinois; that appellant, at the time of the transaction of said busi-

American Guaranty Co. v. State Bank of East Lynn, 244 Ill. App. 16.

ness, had not, and neither has it at any time heretofore, filed in the office of the secretary of State any statement or application to do business in the State of Illinois; that said appellant has not at any time heretofore complied with any provisions of the statutes of Illinois concerning foreign corporations doing business in this State, and that appellant has not received a license or  ermit to do business in the State of Illinois.

There was a general and special demurrer filed by appellant to this plea, which, upon a hearing, was overruled and appellant elected to stand by its demurrer.

Appellee filed a second plea to said declaration in substance averring that the supposed certificate of deposit was never executed and delivered by appellee as a binding obligation, but only for the special purpose, to wit, that on or about May 14, 1915, appellant, by and through one John L. Hamilton, who was then and there president of appellant, a corporation, and acting for and in behalf of appellant, requested appellee, through its cashier, to execute to appellant a certificate of deposit for $3,500 merely as an accommodation to appellant, and for which the said John L. Hamilton would deliver to appellee his promissory note, running for the same length of time and for the same amount as the certificate of deposit, which the appellee should hold until the amount of the certificate of deposit was paid to appellee in cash, and with the distinct agreement by and between appellant, through its president and appellee, through its cashier, that the certificate of deposit and said note should be renewed from time to time until such time as appellant should deposit with appellee the amount mentioned in the certificate of deposit, and with the further understanding and agreement between said parties that the certificate of deposit was not intended and should not take effect as a valid obligation and should not be considered delivered as a valid or binding obligation of appellee

until the deposit with appellee, by appellant, of the said sum of $3,500 mentioned in said certificate; that only upon the payment of said sum should said certificate of deposit be considered as delivered as a present or binding contract; that appellee should incur no liability by signing said certificate of deposit unless and until the amount of said certificate was deposited in cash by appellant with appellee, and that in pursuance of said agreement said original certificate of deposit and said note were concurrently executed and afterwards concurrently renewed from time to time until June 1, 1923, when the certificate of deposit mentioned in the declaration was executed by appellee to appellant, concurrently with the renewal of said promissory note; that at no time has appellant or anyone in its behalf paid or delivered to appellee any money or anything else of value whatsoever for the execution of the certificate of deposit sued upon, and that said certificate of deposit was not executed upon any good and valuable consideration whatsoever. Appellee brings into court and offers to deliver to appellant the said last renewal note, taken concurrently with the execution of said certificate of deposit.

To this plea appellant filed its fifth and ninth replications, averring in substance: That at the time appellee issued the certificate of deposit, as set out, the appellee accepted from the said John L. Hamilton his individual and personal note in the sum of $3,500, due in six months after date, with interest at the rate of 6 per cent per annum, representing a loan by appellee to said John L. Hamilton, individually, in that amount; that appellee thereupon issued and delivered to said John L. Hamilton the certificate of deposit set out, making the same payable, at the request of said Hamilton, to the appellant, and thereupon said Hamilton presented the same to appellant and appellant advanced to said Hamilton the sum of $3,500 without any notice to appellant of any supposed understanding or

agreement, as is in said plea averred; that said transactions were for the personal and individual benefit of said John L. Hamilton and not for the benefit, advantage or accommodation of appellant; that appellee then and there well knew that appellant was without notice of any supposed understanding or agreement, as set forth in said plea, and thereafter appellee concealed from appellant all notice or knowledge of said alleged transaction, although it well knew that said transaction was unknown to appellant and that said transaction was beyond the authority of the said John L. Hamilton to act for plaintiff, as appellee then and there well knew. The replications further aver the renewal of said note from time to time and the payment of a large amount of interest thereon by Hamilton to appellee, and the renewal of said certificate and the payment of interest thereon by appellee to appellant for a period of eight years at the rate of four per cent per annum. The replications further aver that at no time until the commencement of this suit did appellee ever claim that appellant was to assume or pay the obligations of said John L. Hamilton, in said note described, or that there was any understanding or agreement on the part of appellant that said original certificate of deposit, and those issued in renewal thereof, were not what they purported to be, or that the same did not constitute a valid obligation on the part of appellee, or that said transactions were without consideration; but it is averred in said replications that appellee at all times treated the said John L. Hamilton, individually, and the signers of said notes as its debtors, and at all times appellee acknowledged itself to be indebted to appellant in accordance with the terms of said certificates. It is further averred that at the time of the execution of the first certificate of deposit and at the maturity thereof, and at the execution of the first promissory note by said Hamilton, and for some time thereafter, said Hamilton was

financially responsible and owned real estate and other property in the State of Illinois in a sum, in value, above exemptions and incumbrances, in excess of $3,500 out of which judgment could have been collected by legal process in that sum, and that since the issuing of said certificate of deposit and before appellee ever asserted the supposed defense attempted to be set forth in said plea, and before appellant was informed of said alleged arrangement, or had any notice thereof, said Hamilton became and now is insolvent, and appellant is now unable to recover from said Hamilton any sum or sums whatsoever by reason of such insolvency, and this appellant was ready to verify, etc.

Appellee demurred to the replications and the demurrer was sustained whereupon appellant electing to abide by the replications, and upon its demurrer to appellee's amended first additional plea, judgment was entered for appellee that plaintiff take nothing, and the record is brought to this court for review.

As to appellee's amended first additional plea that appellant, prior to the bringing of this action, was engaged in doing business in the State of Illinois and that the cause of action arose out of business being done in the State of Illinois, the averments were the mere conclusions of the pleader, as the statutes regulating foreign corporations have heretofore, in this State, been construed. (*Alpena Portland Cement Co. v. Jenkins & Reynolds Co.*, 244 Ill. 354; *Plew v. Board*, 274 Ill. 232, and many other cases.) But appellee contends that section 94, Cahill's St. ch. 32, ¶ 94, of the revision of the Corporation Act, passed in 1919, is as follows:

"§ 94. No foreign corporation doing business in this State without a license shall be permitted to maintain any suit at law or in equity in any of the courts of this State upon any demand, whether arising out of contract or tort; and all such corporations shall be liable

by reason thereof to a penalty therefor of not less than two hundred and fifty dollars nor more than one thousand dollars, to be recovered in any court of competent jurisdiction, in a civil action to be begun and prosecuted by the Attorney-General,'' is to be read and enforced literally and applies to charitable corporations as well as those ''for profit,'' and is not subject to the exception contained in section 80 of the act, Cahill's St. ch. 32, ¶ 80, eliminating banking, insurance, building and loan and surety companies, and that every foreign corporation doing business in this State must, before it can bring suit in this State, secure a license from the secretary of State, under sections 81 and 82 of the act, Cahill's St. ch. 32, ¶¶ 81, 82. We cannot agree with appellee's contention in this respect.  We include charitable corporations in appellee's contention as the plea does not aver that appellant corporation is organized ''for profit,'' without which it would not be subject to the provisions of section 80 of the act cited which provides that: ''Each foreign corporation organized for pecuniary profit (except banking, insurance, building and loan and surety companies), not now licensed to do business in this State, shall, before it transacts any business or maintains an office in this State, procure a certificate of authority therefor from the secretary of State.''

It is well understood that the exceptions in section 80, Cahill's St. ch. 32, ¶ 80, of the revision, and in the former acts, were inserted for the reason that the exclusive control of permits to engage in banking is in the State auditor, under the Banking Act, Cahill's St. ch. 16a.  The exclusive control of permits to engage in insurance business, building and loan and surety companies is in departments of State other than the secretary of State, and if appellant is engaged in doing business in Illinois as a guaranty company, as its

name implies, it would have no occasion to secure a permit from the secretary of State of this State, as set out in the plea.

Sections 80 to 94, of the revision of the Corporation Act, Cahill's St. ch. 32, ¶¶ 80-94, cover substantially the provisions of the act to regulate the admission of foreign corporations for profit to do business in the State, approved May 18, 1905, of which section one is as follows:

"SECTION 1. That before any foreign corporation for profit shall be permitted or allowed to transact any business or exercise any of its corporate powers in the State of Illinois, other than insurance companies, building and loan companies and surety companies, they shall be required to comply with the provisions of this act and shall be subject to all of the regulations * * *, limitations and restrictions applying to corporations of like character organized under the laws of this State."

Section 6 of the act is as follows: "§ 6. Every foreign corporation amenable to the provisions of this act, which shall neglect or fail to comply with any of the provisions of the same as herein provided, shall be subject to a penalty of not less than one thousand dollars ($1,000) nor exceeding ten thousand dollars ($10,000), to be recovered before any court of competent jurisdiction, and it is hereby made the duty of the Secretary of State, as he may be advised, or may ascertain that any corporation is doing business in contravention of this act, to report such fact to the Attorney General of this State, and it shall be his duty and the duty of the State's attorney of the proper county to bring such actions at law as shall be necessary for the recovery of the penalties imposed hereby, and in addition to such penalty, if after this act shall take effect, any foreign corporation shall fail to comply herewith, no suit may be maintained either at law or

in equity upon any claim, legal or equitable, whether arising out of contract or tort in any court in this State.''

In the construction of the provisions of that act it was very properly held that the penalties provided in section 6 applied only to foreign corporations required by section one of the act to obtain a license before doing business in Illinois, and that the party relying upon section 6 must negative the exceptions in section one of the act. (*Leman v. United States Fidelity and Guaranty Co. of Maryland,* 137 Ill. App. 262; *Delta Bag Co. v. Kearns,* 160 Ill. App. 93; same case 173 Ill. App. 570; *Museum of Fine Arts v. Dicus,* 207 Ill. App. 389; *Journal Co. of Troy v. F. A. L. Motor Co.,* 181 Ill. App. 533; *March-Davis Cycle Mfg. Co. v. Strobridge Lithographing Co.,* 79 Ill. App. 687.)

The words *"amenable to the provisions of this Act,"* contained in said section 6, of course rendered this construction mandatory. Those words are omitted from section 94 of the revision of 1919 and it is contended, therefore, that section 94 applies to all corporations. To effect this construction, it becomes necessary to hold that either the revision of the Corporation Act in 1919 impliedly repealed certain provisions of the Insurance Act, certain provisions of the Foreign Building and Loan Association Act, Cahill's St. ch. 32, ¶ 375 *et seq.* and other acts, or that it was the purpose of the legislature in rewriting said section 94 to place certain foreign corporations, including appellant, under two separate, independent and executive departments of government for regulation, and from each of which such corporations and appellant must secure a permit to do business before any suit can be brought in Illinois. This would be placing restrictions and burdens upon foreign corporations not shared by domestic, and denying to the citizens of the several States privileges and immunities granted to the citizens of this State. Other sections of the Corporation

Act, 80 to 94 inclusive, intended to regulate corporations other than banking, insurance, building and loan and surety companies, based upon said section 80, when applied to banking, insurance, building and loan and surety companies, lead to absurd results, as pointed out, and under section 90, a foreign insurance company, upon paying fees due and filing its proper affidavit, may, by surrendering its license to and filing its affidavit, with the secretary of State, withdraw from the State.

It has been held in *People v. Bradford,* 267 Ill. 491: "A statute is not to be construed as so many isolated words, phrases, clauses or sentences but is to be construed as a whole, having reference to the connection in which the words are used and the intention of the legislature as disclosed from a consideration of the act as a whole and in all its parts. It is the intention of the law-maker that makes the law. (*Hoyne v. Danisch,* 264 Ill. 467.) It is an elementary rule that in ascertaining this contention all parts of a statute must be considered together, and not each part, phrase, clause, sentence or section by itself. (36 Cyc. 1131; *Krome v. Halbert,* 263 Ill. 172; *Hoyne v. Danisch, supra.*)"

Commenting further in that case the court say: "Such provisions are wholly irreconcilable with the idea that the right to such salary is also to depend upon the number of hours of service and to be calculated upon a *per diem* basis."

"The intention of the law-makers is the law, and this intention should be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted, according to their real intent." *People v. Giles,* 268 Ill. 409.

"The courts are bound to presume that absurd consequences leading to great injustice were not contemplated by the legislature, and a construction should be adopted that it may be reasonable to presume was contemplated." *Uphoff v. Industrial Board of Illinois,*

271 Ill. 316, and cases there cited. *Village of Glencoe v. Hurford,* 317 Ill. 220.

The judicial construction given by the courts to the Foreign Corporation Act of 1905, and the terms of those statutes, having acquired a settled meaning, and the exceptions in section 80 of the Revised Act, being the same terms contained in the former act, becomes a part of the new law, unless by qualifying or explanatory addition a contrary intention of the legislature is made clear. It is presumed that the legislature in passing the later law knew the judicial construction which had been given to the words of the prior enactment. (*Village of Glencoe v. Hurford, supra; People v. Barnett,* 319 Ill. 408; *People v. Day,* 321 Ill. 555.) In the opinion of this court section 94 of the Revised Corporation Act of 1919 had reference only to the corporations referred to in section 80 of the act, and the words "amenable to the provisions of this Act," contained in section 6 of the Act of 1905, were omitted from section 94 of the Revised Act, so that the ambiguous and absurd results of applying the inhibition of the courts to all corporations, covered by the entire Revised Corporation Act, would be avoided. The plea in question does not charge that appellant is an organized corporation for pecuniary profit, or that it is doing business in the State of Illinois under its charter powers, and for anything that appears in the plea appellant may have had power, under an act entitled "An Act to Enable Corporations in Other States and Countries to Lend Money in Illinois, to Enforce their Securities and to Acquire Real Estate as Security," approved May 24, 1897, to bring this suit without any license or permit.

The court below erred in not sustaining appellant's demurrer to the plea.

As to appellant's fifth and ninth replications to the second plea of appellee, under the facts set out in the replications, the certificate in question was issued by

appellee for Hamilton's accommodation, and appellee paid the interest upon the certificate and presumably made a profit upon the instrument during a period of about eight years. Appellant paid cash for the instrument and never had any notice or information as to the contingent liability of appellee thereon, claimed in the plea, other than the claimed knowledge of Hamilton, president of appellant company, who gave his notes to appellee company and negotiated the instrument to appellant and secured $3,500 of appellant's funds for his own use, benefit and accommodation. The instrument was made payable directly to appellant. Appellee accepted Hamilton's individual notes for the instrument, issued conditionally, as appellee claims by its plea. Appellant paid cash for the instrument without notice of any defect in the issuing of the certificate, unless notice to Hamilton, president of appellant company using appellant's funds for his own benefit, constitutes notice to appellant. Is appellant, under the replications, a holder for value in due course? The Negotiable Instruments Act, Cahill's St. ch. 98, ¶¶ 46, 49, 72 and 213, provides:

"§ 26. Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

"§ 29. An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party and in case a transfer after maturity was intended by the accommodating party notwithstanding such holder acquired title after maturity."

"§ 52. A holder in due course is a holder who has taken the instrument under the following conditions:

"1.   That the instrument is complete and regular upon its face.

"2.   That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact.

"3.   That he took it in good faith and for value.

"4.   That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"§ 190.   'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof."

The payee of an instrument may be a holder in due course.   (*Many, Blanc & Co. v. Krueger,* 153 Ill. App. 327.)

Notice to an officer of a corporation is not notice to the corporation in transactions where the officer is dealing with the corporation in his own interest and not in the interest of the corporation.   (*Metcalf v. Draper,* 98 Ill. App. 399; *Higgins v. Lansingh,* 154 Ill. 388; *Seaverns v. Presbyterian Hospital,* 173 Ill. 420; *United States Disposal & Recovery Co. v. Industrial Commission,* 291 Ill. 485.)

In *Higgins v. Lansingh, supra,* the court held: "His interest is opposed to theirs, and the presumption is, not that he will communicate his knowledge of any secret infirmity of the title to the corporation, but that he will conceal it.   Where an officer of a corporation is thus dealing with them in his own interest opposed to theirs, he must be held not to represent them in the transaction, so as to charge them with. the knowledge he may possess but which he has not communicated to them, and which they do not otherwise possess, of facts derogatory to the title he conveys.   *Commercial Bank v. Cunningham,* 24 Pick. 270; *Kennedy v. Green,* 3 M. & K. 699; *In re European Bank,* L. R. 5 Ch. App. 358; *In re Marseilles Extension Railway Co.,* L. R. 7 id. 161;

Angell & Ames on Corp. 308; *Winchester v. Baltimore and Susquehanna Railroad Co.*, 4 Md. 231.''

We are of the opinion that the allegations in the replications, if established, constitute appellant· a holder in due course of the instrument and fully answer appellee's plea, and that the court erred in sustaining the demurrers to appellant's replications.

For the errors of the circuit court of Vermilion county in overruling appellant's demurrer to appellee's amended first additional plea, and in sustaining appellee's demurrer to the fifth and ninth replications to appellee's second plea, the judgment of said court is reversed and the cause remanded to said court, with directions to proceed in conformity with the views expressed in this opinion.

*Reversed and remanded with directions.*