Rae C. Heiple, Receiver of Henry Denhart Company, Appellee, v. C. H. Boyer and C. J. Driever, Appellants.

Gen. No. 8,554.

Opinion filed February 1, 1932.

VELDE & PRETTYMAN, for appellants.

GEORGE W. HUNT and J. EDWARD RADLEY,.for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

In vacation during the May Term, A. D. 1930 of the circuit court of Tazewell county, a judgment by confession for the sum of $7,785.71 was entered in favor of Rae C. Heiple, receiver of Henry Denhart & Co., a banking corporation organized under the laws of this State, and against appellants C. H. Boyer and C. J. Driever. The principal of the note was $6,964.75. It bore six per cent interest until due and seven per cent per annum from maturity until paid. It was made payable to Henry Denhart & Co. Bank on or before one year after date and was dated January. 22, 1929, and contains the usual powers of attorney to confess judgment. On the 8th day of September, 1930, it being the first day of the September Term of said court, a motion was made by said defendants to open up the judgment and for leave to plead to the merits and affidavits were filed in support thereof. The motion was allowed and all further proceedings stayed until further order of the court, defendants were granted leave to plead within 10 days and the judgment was ordered to stand as a lien pending the disposition of the cause.

The defendants originally filed three pleas. The first plea was withdrawn and an additional plea was

filed in lieu thereof. The court sustained a demurrer to the second and third pleas and also to the additional plea. The defendants elected to abide by their pleas numbers two and three and leave was granted to file an amended additional plea.

It is averred in the second plea that said note was made without any good or valuable consideration passing from said Henry Denhart & Co. or received by the defendants or either of them.

In the third plea it is averred that the note mentioned was given by defendants to satisfy said Henry Denhart & Co., without any consideration and solely as an accommodation to said Henry Denhart & Co., at its request and at the special instance and request of the duly authorized officers of said Henry Denhart & Co.

The amended additional plea is in substance as follows:

"That the plaintiff ought not to have his aforesaid action against them, these defendants, or either of them, because they say that the promissory note mentioned in the declaration herein was without consideration, passing from said Henry Denhart & Co. (hereinafter referred to as 'said bank'), or received by these defendants, because in, to wit, the year 1926, these defendants, acting on behalf of themselves and for certain other persons residing in the City of Chicago, Illinois, through the solicitation of the officers and directors of said bank, viz., Henry Denhart, as president; Frank W. Hops, as vice-president, and H. A. Kingsbury, as cashier, became interested in the purchase of stock in the Garfield Casualty Company, an Illinois corporation, with principal office and place of business at Washington, Tazewell County, Illinois, where said bank of Henry Denhart & Co. was located.

"That said Denhart, Hops and Kingsbury were at the time directors of said Garfield Casualty Company and were each owners of a large amount of stock in

said Garfield Casualty Company; that said Hops was president of said Casualty Company and said Kingsbury was treasurer thereof, and that said Casualty Company was actively managed by one Dunnington, the secretary thereof, who was a former employe of said bank; and that said Denhart, Hops and Kingsbury informed these defendants that they (said Denhart, Hops and Kingsbury) were very desirous that these defendants would purchase stock of said Casualty Company and would actively interest themselves in the affairs of said Casualty Company, by reason of the fact that the business of said Casualty Company was unprofitable and by reason of the prior experience of this defendant Boyer in the insurance business. That at the time said Denhart, Hops and Kingsbury were the owners of more than 90 per cent of the capital stock of said bank, being the owners of all the capital stock of said bank except eighty (80) shares owned by a son of said Hops.

"That these defendants finally promised said Denhart, Hops and Kingsbury that these defendants, for and on behalf of themselves and the others so represented by these defendants, would purchase one-fourth of the common capital stock of said Garfield Casualty Company for $50,000.00, which would be the full face value thereof for capital and surplus, provided the capital and surplus of said Casualty Company would be found upon proper examination to amount to at least $200,000.00; that upon investigation of the assets of said Casualty Company it was ascertained that the capital and surplus of said Casualty Company amounted to $193,859.33, and these defendants thereupon notified said Denhart, Hops and Kingsbury that these defendants and those so associated with them would not complete the purchase of said stock because of the fact that the capital and surplus of said Casualty Company was less than the sum of $200,000.00.

"That said Denhart, Hops and Kingsbury were greatly interested in the purchase by these defendants of stock in said Casualty Company for the reason that said Denhart, Hops and Kingsbury were personally large stockholders of said Casualty Company, and many of the patrons of said bank had become stockholders in said Casualty Company by reason of the fact that said Denhart, Hops and Kingsbury were stockholders and directors of said Casualty Company, and that said stockholders of said Casualty Company would be even more friendly to said bank if the stock of said Casualty Company were made profitable and dividend paying.

"That it was then proposed to these defendants by said Denhart, Hops and Kingsbury (acting as stockholders, directors and officers of said bank and also as stockholders, directors and officers of said Casualty Company) that said bank would advance to said Casualty Company the amount necessary to make the capital and surplus of said Casualty Company equal to $200,000.00 (which amount was, to wit, $6,140.67), provided these defendants and those so represented by them, would complete the purchase of one-fourth of the capital stock of said Casualty Company for the sum of $50,000.00, as aforesaid, and provided these defendants would, in order to keep the records of said bank and of said Casualty Company balanced and in proper condition, execute and deliver to said Casualty Company or to said bank, a note for said sum of $6,140.67, which note should be and would be delivered to and accepted by said bank upon the distinct understanding and condition that these defendants would never be held liable upon said note by said bank or said Casualty Company or called upon to pay the same or any part thereof, but that said note should be solely paid out of and from dividends of said Casualty Company, if and when the same were in the future declared and paid to stock-

holders of said Casualty Company residing in Washington, Illinois, and in the immediate vicinity thereof, and upon the further distinct understanding and condition that said note, if not paid when due, should be renewed for the principal sum and interest and that the same conditions and terms should apply to any and all renewal notes as to the original note; and said Denhart, Hops and Kingsbury then and there advised these defendants that the business relations of said Denhart, Hops and Kingsbury with the stockholders of said Casualty Company were of such a kind that said Denhart, Hops and Kingsbury felt justified and authorized to enter into said understanding and condition relative to the payment of said note and any and all renewals thereof, and said Denhart, Hops and Kingsbury then and there agreed that if the dividends to be declared in the future to stockholders of said Casualty Company residing in Washington, Illinois, and the immediate vicinity thereof, did not in a reasonable time pay the amount due on said note (or any renewals thereof), that the said Denhart, Hops and Kingsbury would pay said note or the balance of it or any renewal thereof, or cause it to be paid by themselves and other stockholders of said Casualty Company residing in Washington, Illinois, and in the immediate vicinity thereof.

"That said Denhart, Hops and Kingsbury at that time, and as a part of said transaction, informed these defendants that practically the entire capital stock of said Casualty Company was then owned by residents of Washington, Illinois, and the immediate vicinity thereof.

"That pursuant to and relying upon said promises and representations of said Denhart, Hops and Kingsbury (acting as stockholders, directors and officers of said bank and of said Casualty Company, as aforesaid), these defendants, on or about November 27, 1926, without consideration and solely as an accommodation to said Denhart, Hops and Kingsbury (acting

as stockholders, directors and officers of said bank and of said Casualty Company, as aforesaid), executed the promissory note proposed as aforesaid in the principal sum of, to wit, $6,140.67, dated, to wit, November 27, 1926, due and payable one year after date to said bank and delivered the same to said Denhart, Hops and Kingsbury, so acting as stockholders, directors and officers of said bank, and of said Casualty Company, which bank thereupon advanced and paid or credited said sum of $6,140.67 to said Casualty Company in order to bring the capital and surplus of said Casualty Company up to the total amount of $200,000.00.

"That thereupon these defendants, for and on behalf of themselves and those so represented by these defendants, thereupon completed the purchase of one-fourth of the common capital stock of said Casualty Company for the sum of $50,000.00, and defendants aver that the stock so purchased by these defendants for themselves and for those so represented by them was not treasury stock, but was stock which had theretofore been issued to residents of Washington and the immediate vicinity thereof, and a considerable part of the stock transferred to these defendants and those so represented by them, to wit, 200 shares was stock which, at and prior to all the transactions aforesaid, was owned by said Denhart, Hops and Kingsbury, or some of them.

"That during all the negotiations and transactions herein set forth, these defendants had just reason to believe, and did believe that said Casualty Company, said bank, said Denhart, said Hops and said Kingsbury were each and all entirely solvent, and that said Hops and Kingsbury were men of considerable financial means over and above all their just debts and liabilities, and that said Denhart was a man of large financial means over and above all his just debts and liabilities.

"That on or about the date when said note so executed by these defendants, and delivered to said Denhart, Hops and Kingsbury in the sum of, to wit, $6,140.67, matured, these defendants at the request and solicitation of said bank, on, to wit, November 26, 1927, executed a renewal note in the principal sum of $6,509.11 (hereinafter referred to as the 'first renewal note'), due and payable in one year and delivered it to said bank, and soon after the time when said first renewal note matured on, to wit, January 22, 1929, these defendants executed and delivered to said bank another note in the principal sum of $6,964.75, and is the note described in the declaration herein.

"That both said first renewal note and said second renewal note were executed at the request and solicitation of said officers and directors of said bank and upon the same distinct promise and condition upon which said original note was delivered, namely, that these defendants would never be held liable by said bank upon said renewals, or either of them, or called upon to pay the same, or any part thereof; but that said renewals respectively should be paid solely out of and from dividends of said Casualty Company, as and when the same were in the future declared and paid to stockholders of said Casualty Company, residing in Washington, Illinois, and in the immediate vicinity thereof, as is evidenced by the written statements of said Kingsbury, acting as cashier of said bank.

"That neither of these defendants, or any of those so represented by them as aforesaid, did at the time reside or have at any time since resided in the City of Washington, Illinois, or in the immediate vicinity thereof.

"And so these defendants say that the note sued on herein was made and delivered without any good or valuable consideration, and was made and delivered on condition as hereinbefore set forth."

To the amended additional plea plaintiff filed a general and special demurrer. The special causes for the demurrer are as follows:

"1. That said plea is a defense based solely on the averment that the note in question was without consideration and an accommodation by the defendants to the Henry Denhart & Co. Bank, or H. A. Kingsbury, Henry Denhart, Frank W. Hops.

"2. The Receiver of defunct Henry Denhart & Co., a banking corporation, for the benefit of its creditors, is in law an innocent holder of such assets, and as against him it is no defense that the officers of the defunct bank knew of the secret understanding set forth in said plea, or that there was a want or total lack of consideration.

"3. The note in question was given to the bank and formed a part of its assets for the purpose of swelling its assets and leading the public officers, such as the Auditor of Public Accounts, as well as the stockholders of the bank and those dealing with it, to believe that the note in question was a part of the assets of the bank, and the defendants are estopped to plead want of consideration as against the Receiver.

"4. The Receiver of the defunct bank of Henry Denhart & Co., when attempting to marshal the assets of such bank for the benefit of its creditors, is in law an innocent holder of such assets, for which reason want of consideration is not a proper plea, and the matters set up in said plea are not available to the defendants against the Receiver, because by so doing they would take advantage of their own fraudulent misrepresentations as to the Auditor of Public Accounts, the creditors and stockholders of said bank."

The court also sustained the demurrer to the amended additional plea and the defendants elected to abide by said plea. Thereupon the court reinstated said judgment as of the date of its entry and vacated its order staying execution thereon.

The propriety of the trial court in sustaining the demurrers to the second, third and amended additional pleas as above set forth is the only question involved on this appeal. It is alleged in the second plea in substance that the plaintiff ought not to have his action against the defendants or either of them, because the note in question was made "without any good or valuable consideration passing from Henry Denhart & Co. or received by these defendants, or either of them." In this plea it is not stated affirmatively and positively that there was no consideration for the note but the consideration mentioned is limited to one passing from Henry Denhart & Co. and received by the defendants. In this respect it is evasive because it does not eliminate the possibility that the note might have been executed for the benefit of a third party or for a forbearance. In other words the plea in question does not aver generally a want of consideration but does aver a want of a limited, specific consideration. In the case of *Dawson v. Tolman*, 37 Ill. App. 134, the plea under consideration alleged, "that the defendants received no money, goods or other things of value for signing the note, either directly or indirectly; that they were not indebted to Riley; that no consideration was given to them, or to any other persons for their account, for signing the same; that no consideration or thing of value was paid or given by Riley, or by any other person on his account, for the signing of the note, of all of which plaintiff, at the time of the indorsement to him, had notice; and so defendants say that said note was made without any good and valuable consideration." The court in passing upon this plea held: "The second special plea does not aver that the note was *without consideration,* but proceeds to enumerate certain considerations which were not given for the note, concluding with the averment, 'and so the defendants,' etc., which means 'and therefore

the defendants say that as the considerations enumerated were not given there was no consideration,' which is manifestly a *non sequitur,* as the note may have been an accommodation note and plaintiffs may have paid value for it, and still the averments in the plea may be true.'' Professor Williston in his work on Contracts (vol. 1, p. 681, sec. 354), lays down the rule as follows: ''It is sometimes laid down in the books that consideration must move from the promisee, and it is occasionally supposed that infringement of this rule is the basis of the objection to allowing an action by a third person upon a promise made for his benefit. This is not the case. In such promises the consideration does move from the promisee, but the beneficiary who seeks to maintain an action on the promise is not the promisee. Consideration, therefore, does not move from the plaintiff and this fact has been thought a fundamental objection; but the rule that consideration must move either from the plaintiff or from the promisee, so far as it exists, is purely technical, and in a developed system of contract law there seems no good reason why A should not be able for a consideration received from B to make an effective promise to C. *Unquestionably he may in the form of a promissory note,* and the same result has been generally reached in the United States in the case of an ordinary simple contract.'' And also in section 114 of the same work says: ''So far as possible the law should enforce reasonable business agreements seriously made, and, certainly it is a possible and reasonable agreement for A to pay B a price or consideration for a promise made by B to C. . . . Without doubt a promissory note made to a payee in return for a consideration received by the maker from a third person is binding.'' In 8 C. J. 213, sec. 348, the rule is announced as follows: ''2. Consideration from or to Third Person. It is not necessary that the consideration should pass

from the promisee. Thus the maker's liability to the payee may be supported by a consideration coming from a third person who is not a party to the instrument; and the surety's liability to the payee may rest on a consideration proceeding from the principal maker. Likewise, it is not necessary that the promisor should be benefited thereby. Thus, the consideration may benefit only a third person who is not a party to the instrument; and there is a consideration, although it does not pass to the maker personally but to a corporation of which he is the president and a stockholder." It is thus apparent that this note might have been executed by the defendants for the benefit of a third person. The plea is therefore bad as a plea of want of consideration and the force of this criticism will become more apparent when the amended additional plea is hereinafter discussed.

In the third plea it is alleged in substance that the note was executed by the defendants to satisfy Henry Denhart & Co., without any consideration and solely as an accommodation to Henry Denhart & Co., at its request and at the special instance and request of its duly authorized officers. The averment that the note was given to satisfy Henry Denhart & Co. presupposes that it was given for some consideration. If it is intended by the plea that the note was an accommodation note purely, then it is but a pure conclusion of the pleader as no facts are stated in the plea by which the court could determine that question. This plea presents no issue on which the plaintiff could join by replication.

In the amended additional plea it is averred that Henry Denhart was president, Frank W. Hops was vice president and H. A. Kingsbury was cashier of said bank of Henry Denhart & Co. and that said Denhart, Hops and Kingsbury were also directors and stockholders of the Garfield Casualty Co., Hops being

president and Kingsbury being treasurer thereof; and that said Denhart, Hops and Kingsbury were the owners of all the stock of the said Bank except 80 shares owned by a son of said Hops. The plea further avers that in 1926 the defendants acting on behalf of themselves and for certain other persons residing in the City of Chicago through the solicitation of the officers and directors of said Bank, viz., Denhart, as president, Hops, as vice president and Kingsbury, as cashier, who were also stockholders, directors and officers of said Casualty Company as aforesaid, became interested in the purchase of stock in said Casualty Company and that said Denhart, Hops and Kingsbury informed the defendants that they were very desirous that the latter would purchase stock in said Casualty Company and actively interest themselves in the affairs of said Casualty Company by reason of the fact that the business of said Casualty Company was unprofitable and by reason of the prior experience of the defendant Boyer in the insurance business; that the defendants promised Denhart, Hops and Kingsbury for and on behalf of themselves and others represented by them that they would purchase one-fourth of the common capital stock of said Casualty Company for $50,000 which would be the full face value thereof for capital and surplus, provided the capital and surplus of said Casualty Company would be found upon proper examination to amount to at least $200,000; that upon investigation it was ascertained that the capital and surplus of said Casualty Company amounted to $193,859.33 and the defendants thereupon notified Denhart, Hops and Kingsbury that they would not complete the purchase of said stock because of the fact that the capital and surplus was less than the sum of $200,000; that said Denhart, Hops and Kingsbury were greatly interested in the purchase by these defendants of stock in said Casualty Company for the

reason that said Denhart, Hops and Kingsbury were personally large stockholders of said Casualty Company, and many of the patrons of said Bank had become stockholders of said Casualty Company by reason of the fact that they were stockholders and directors of said Casualty Company and that said stockholders of said Casualty Company would be even more friendly to said Bank if the stock of said Casualty Company was made profitable and dividend paying; that it was then proposed to the defendants by Denhart, Hops and Kingsbury (acting as stockholders, directors and officers of said Bank and also as stockholders, directors and officers of said Casualty Company) that said Bank would advance to said Casualty Company the amount necessary to make the capital and surplus of said Casualty Company equal to $200,000 (which amount was, to wit, $6,140.67), provided the defendants and those so represented by them would complete the purchase of one-fourth of the capital stock of said Casualty Company for the sum of $50,000, and provided the defendants would, in order to keep the records of said Bank and of said Casualty Company balanced and in proper condition, execute and deliver to said Casualty Company or to said Bank, a note for said sum of $6,140.67, which note would be delivered to and accepted by said Bank upon the distinct understanding and condition that the defendants would never be liable upon said note by said Bank or said Casualty Company or called upon to pay the same or any part thereof, but that said note should be paid out of and from dividends of said Casualty Company, if and when the same were in the future declared and paid to stockholders of said Casualty Company, and upon further distinct understanding and condition that said note, if not paid when due, should be renewed for the principal sum and interest and that the same conditions and terms should apply to any and all renewal notes as to the original note;

and that said Denhart, Hops and Kingsbury agreed with the defendants that if the dividends to be declared in the future to stockholders of said Casualty Company did not in a reasonable time pay the amount due on said note (or any renewals thereof) then the said Denhart, Hops and Kingsbury would pay said note or the balance of it or cause it to be paid by themselves and other stockholders of said Casualty Company; that pursuant to and relying upon said promises of Denhart, Hops and Kingsbury (acting as stockholders, directors and officers of said Bank and of said Casualty Company, as aforesaid) the defendants on or about November 27, 1926 without consideration and solely as an *accommodation to said Denhart, Hops and Kingsbury* (acting as stockholders, directors and officers of said Bank and of said Casualty Company, as aforesaid) executed the promissory note proposed as aforesaid in the principal sum of $6,140.67 *and delivered the same to said Denhart, Hops and Kingsbury,* so acting as stockholders, directors and officers of said Bank and of said Casualty Company, which Bank thereupon advanced and paid or credited said sum of $6,140.67 to said Casualty Company in order to bring the capital and surplus of said Casualty Company up to the total amount of $200,000; that the defendants thereupon completed the purchase of said stock and that 200 shares thereof so purchased by the defendants were owned by said Denhart, Hops and Kingsbury or some of them; that said note was renewed twice.

It is apparent from the averments in this plea that during all the transactions for the purchase of this stock the defendants were dealing with Denhart, Hops and Kingsbury personally and not with the Bank, Henry Denhart & Co. The Bank had no interest in the Casualty Company and could make no agreement in regard to the sale of its stock or in regard to any other matter connected therewith nor can the Bank

be charged with notice of the agreement and contract between Denhart, Hops and Kingsbury and the defendants. In the case of *American Guaranty Co. v. State Bank of East Lynn*, 244 Ill. App. 16, the rule is announced as follows: "Notice to an officer of a corporation is not notice to the corporation in transactions where the officer is dealing with the corporation in his own interest and not in the interest of the corporation." In the plea itself, it is specifically averred that all the promises made were made to or by the defendants and Denhart, Hops and Kingsbury in their personal capacity. The Bank did not in any way enter into the deal and was not bound by any of the agreements made between the individual parties for their own individual benefit. Even if the averments in the plea were such as to make the Bank a party to the agreement, the facts alleged would clearly show that the loan was made by the Bank and the note executed for the benefit of the Casualty Company as a third party and the consideration for the note would in that event have been perfectly good.

Further, if this plea can be construed to involve the Bank as a party to the agreement and the note was simply given to deceive the bank examiner and lead the auditor of public accounts and the depositors in said Bank and the public generally to believe that the note in question was good and was a part of the assets of the Bank, then the makers of the note were parties to the fraud and cannot avoid liability thereon. From no point of view does this plea set forth a lawful defense to the note. The receiver stands in the shoes of the Bank and, acting in such capacity, it is his duty to collect the assets of the Bank and has a right to sue as such receiver.

The trial court did not err in sustaining the demurrers to the respective pleas and the judgment of the circuit court is affirmed.

*Judgment affirmed.*