DONALD J. CHONOWSKI, Plaintiff-Appellee, *v.* CONRAD DYKE *et al.*, Defendants-Appellants.

Third District   No. 78-292

Opinion filed April 9, 1980.—Rehearing denied April 28, 1980.

Robert Canfield, of The Canfield Law Offices, of Rockford, for appellants.

William J. Wimbiscus, Jr., and Cornelius J. Hollerich, both of Spring Valley, and Peter F. Ferracuti & Associates, of Ottawa, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff, Donald J. Chonowski, filed this action in the Circuit Court of Bureau County to collect $25,000, plus interest, on a note executed by defendants, Conrad J. Dyke and Commercial Products Corporation. The note was due on March 20, 1975, and contained a confession of judgment clause. When defendants refused to pay the note, plaintiff obtained a judgment by confession on April 4, 1975, which was later set aside, and in March of 1978, the cause was tried before a jury. A verdict was returned in favor of plaintiff in the amount of $30,757.75, and this appeal followed.

At one time plaintiff owned the Pontiac Shopping Center in Pontiac, Illinois, which he later traded to Bert F. Hinrichs for a farm and a series of promissory notes. In 1963 Hinrichs filed bankruptcy, and plaintiff, as one of his creditors, received notice that the beneficial interest in the property would be sold at a public auction in Chicago on December 30, 1964. A restaurant and a bowling alley were tenants occupying the property, and title was held by the Bank of Pontiac as trustee of trust No. 133.

Plaintiff and Conrad G. Dyke had previously been associated in financing and developing shopping centers in two other locations. According to plaintiff's testimony at trial, plaintiff asked Dyke to attend the sale in Chicago and to bid on the Hinrichs property for plaintiff. Dyke asked to be a partner in the venture, and the two agreed to terms. As a result, on December 20, 1964, a memorandum was written out by Mrs. Chonowski on Commercial Products Corporation stationery setting forth the monthly rental income and stating, "C.P.C. will advance approximately $16,500.00 to satisfy Bankruptcy lien. Dyke and Chonowski split 50-50." Both Dyke and plaintiff signed at the bottom of the page. This document was admitted into evidence as plaintiff's exhibit No. 3.

Dyke attended the auction with his attorney, Paul Perona, and placed the high bid for the property in the sum of $20,500. At the sale Perona advised the bankruptcy trustee that the purchaser was Chonowski, and Dyke, who was present, did not object. Commercial Products Corporation paid the purchase price, and on March 16, 1965, the trustee in bankruptcy executed an assignment of the beneficial interest in the real estate trust (trust No. 133) to Donald J. Chonowski. In the meantime, Dyke offered to buy plaintiff's interest in the venture by means of a note for $25,000 payable in 10 years after the existing mortgage was paid, and plaintiff agreed. At Dyke's request Attorney Perona prepared a corporate resolution authorizing Dyke to execute the $25,000 promissory note. The board of directors of Commercial Products Corporation approved the resolution on January 15, 1965. Perona also prepared an assignment of beneficial interest from Chonowski to Dyke and the note from Dyke to

Chonowski, both of which were executed on March 20, 1965. Perona prepared a bill for $400 for his services in connection with this transaction, which Dyke paid in full.

Documents in the record indicate that in early March of 1965, Dyke notified the attorney for the trustee in bankruptcy that his corporation would be the owner of the beneficial interest in the shopping center property; however, at Perona's request, title was placed in Chonowski's name.

Perona's letter of instruction contained the following:

"I do not want title to run directly to Mr. Dyke or his corporation because I think that the note which he is signing and giving to Mr. Chonowski could be voided for lack of consideration if Mr. Dyke died and there was an actual transfer of the beneficial interest from Mr. Chonowski to Mr. Dyke.

However, I already have an assignment drawn from Mr. Chonowski to Mr. Dyke and am only awaiting the assignment from you to Mr. Chonowski."

In accordance with Perona's instructions, title was assigned to plaintiff who then executed the assignment to Dyke in exchange for Dyke's note. When the note became due in 1975, Dyke refused to pay, and in the ensuing litigation he pleaded two affirmative defenses, one based on fraud and the other on lack of consideration. The defense of lack of consideration was stricken as an improper pleading. At trial, Dyke, who was then 83 years old, testified that in December of 1964 plaintiff said that he had an exclusive right to buy the Pontiac Shopping Center and that he would like to form a partnership with Dyke. After Dyke declined the partnership, plaintiff offered to sell his one-half interest for $25,000. Dyke said that in December of 1964, plaintiff came to Dyke's house and, using corporation stationery, wrote out plaintiff's exhibit No. 3. According to Dyke, this agreement was never signed, and the signatures appearing there must have been imposed by means of photography. A carbon copy was made of this document which was also introduced into evidence. Dyke said that before going to Chicago, he had his attorney, Paul Perona, prepare the $25,000 note and the corporate resolution, both of which were executed before December 30, 1964. (The documents themselves contained the date March 20, 1965, written in ink, as the date of execution.) Thus, according to Dyke, he bought plaintiff's supposed exclusive right to purchase before the sale, and bid at the auction in his own name. Dyke stated that he gave Perona the $20,500 to buy the property, and when he received a notice from Perona in January that the beneficial interest had been given to plaintiff, he realized that Perona had "double crossed" him. Dyke said on March 19, 1965, he wrote "cancelled

by new agreement" on the face of plaintiff's exhibit No. 3, and he and plaintiff signed it on that date. During cross-examination Dyke admitted that he later sold the shopping center for $200,000.

Attorney Paul Perona testified for plaintiff, corroborating plaintiff's version of the transaction. Plaintiff's wife identified plaintiff's exhibit No. 3 as being in her handwriting and as having been signed the day she wrote it in December 1964.

The jury returned a verdict of $30,757 in favor of plaintiff, and the trial court entered judgment thereon. Defendants have appealed.

Defendants contend that the trial court should have directed a verdict in favor of defendants because the evidence was so clear that plaintiff gave no consideration for the $25,000 note which was the basis for this suit. We note first that defendants' affirmative defense alleging lack of consideration was stricken as a defective pleading so that the issue was not properly a part of the trial. Secondly, the evidence clearly shows that plaintiff had received the beneficial interest to the property from the trustee in bankruptcy, which he then assigned to defendants as consideration for the note.

Defendants also argue that the evidence was clear that plaintiff falsely and fraudulently misrepresented to Dyke that he had an exclusive right to purchase the beneficial interest at the bankruptcy sale. The record discloses, not that the evidence was clear, but rather that it was contradictory and presented a question of fact for the jury. Furthermore, plaintiff's evidence, including his own testimony, that of his wife and of Perona, was more than sufficient to support the verdict of the jury.

■■ Defendants also contend that the trial court erred in striking the affirmative defense of lack of consideration when that issue is properly one for a jury. According to statute, failure of consideration is a defense to a promissory note "if the such instrument was made or entered into without a good and valuable consideration * * * ." (Ill. Rev. Stat. 1977, ch. 98, par. 10.) Here defendants' second affirmative defense was stated in the following language: "Donald J. Chonowski paid no consideration whatsoever for said judgment note." The trial court struck down that pleading as failing to state a valid defense. Asserting that plaintiff paid no consideration is not the same as saying that the note was made without consideration since consideration could have been furnished by a third party. (*Heiple v. Boyer* (1932), 264 Ill. App. 572.) The trial court did not err in striking defendants' defective pleading.

Defendants also assign as error the form of the issues instruction (No. 15) and the burden of proof instruction (No. 12) given to the jury. Defendants insist that both instructions erroneously required the jury to find that Dyke signed the $25,000 note prior to December 30, 1964, in

order to find that defendants had proved fraudulent misrepresentation when in fact the date of signing was immaterial. We think, to the contrary, the date of signing was material.

The defense claims that the note was executed in reliance upon plaintiff's representation that he had an exclusive right to purchase the beneficial interest owned by Hinrichs. Dyke testified that he signed the note for $25,000 before attending the sale, and he also described the bidding at the auction conducted by the Federal court on December 30, 1964. Obviously, once Dyke attended the sale and heard the bidding, he was on notice that plaintiff did not have an exclusive right to purchase the property. Thus, if the note was executed after December 30, 1964, it could not have been signed in reliance upon the misrepresentation, as claimed. Consequently, we find no merit in defendants' contention.

■ Taken with the case is plaintiff's motion to strike those portions of defendants' brief which assert issues related to jury instructions. Plaintiff says that those issues were waived because defendants objected only to instruction No. 15, which is not identified in the record, and that none of the instructions are included in the excerpts of record. We deny plaintiff's motion. We find that the instructions given are set out in the excerpts and in the common law record, although they are not numbered, and that an envelope of numbered instructions, both those given and those refused, is included in the record. The only instructions challenged are Nos. 12 and 15. While No. 12 was given without defendants' objection, the objection to No. 15 was sufficient to preserve the issues raised by defendants because the disputed language relating to the date of the note was the same in both instructions.

For the reasons given, we affirm the judgment of the Circuit Court of Bureau County.

Affirmed.

ALLOY and SCOTT, JJ., concur.