JOHN PANNO, Plaintiff-Appellee, v. JOSEPH NICOLAU, Defendant-Appellant.

Fourth District   No. 4—87—0901

Opinion filed September 30, 1988.

Arvey, Hodes, Costello & Burman, of Chicago (Marc C. Smith, of counsel), for appellant.

James R. Engelman, of Fellheimer, Travers & Luckman, Ltd., of Pontiac, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

On June 29, 1987, plaintiff John J. Panno filed an amended complaint against defendant Joseph Nicolau claiming damages caused by breach of an oral personal-service contract. The complaint also requested the trial court to either declare the contract rescinded or recognize that the parties had reached a mutual rescission. After a bench trial, the circuit court of Livingston County found defendant liable for damages to plaintiff in the amount of $2,900 plus costs. Defendant appeals and we affirm.

In June of 1985, defendant telephoned plaintiff and offered to procure for him an Audi 5000 automobile direct from West Germany at a substantial discount. Defendant indicated he had provided such a service for people in the past and was currently dealing with plaintiff's uncle. Defendant offered to set up the transaction by taking care of the necessary phone calls and paperwork. Plaintiff stated he was interested in purchasing an automobile with defendant's help.

In September of the same year, after several phone conversations with defendant, plaintiff made a final decision to order an Audi. At defendant's instruction, plaintiff sent a check payable to defendant in the amount of $650. Plaintiff understood the money would "get the ball rolling" and represented a deposit on the automobile. The check's notation reads: "deposit-Audi."

On October 28, 1985, plaintiff received an invoice from Ernst Islinger Motors (Islinger), a West German Audi, Porsche, and Volkswagen dealership, confirming plaintiff's order for an Audi 5000 S automobile with specific options. The invoice read: "The confirmation of your order is only valid after receipt of DM 6.000,00 deposit." Defendant told plaintiff to issue a cashier's check to Islinger in the amount of $6,000. Defendant forwarded the check to West Germany.

Plaintiff testified he had not heard of Islinger until the invoice arrived. Defendant never mentioned where the car was coming from, although plaintiff admitted he understood the purchase price was figured in deutsche marks. Although the ultimate price depended on the value of the dollar, plaintiff anticipated the car would cost him around $17,500. According to plaintiff, defendant, at their initial conversation, assured plaintiff his money would be refunded if any problems arose in obtaining the car.

Defendant testified he instructed plaintiff from the outset that the car would come from a *bona fide* Audi-Porsche-Volkswagen dealer in Mannheim, West Germany, known as Ernst Islinger Motors. Defendant said Islinger, not plaintiff, compensated him $650 for his services. Defendant admitted he told plaintiff a refund of the $6,000 was "possible" if the deal went sour.

After receipt of the automobile was much delayed, plaintiff contacted defendant and asked if it was possible to cancel the order for the Audi. Plaintiff indicated he would cancel only if he was sure to get a full refund. Defendant said: "No problem, I can get you back the money within *** three to four weeks." Plaintiff then told defendant to keep the $650 as compensation for his trouble. Plaintiff testified he would not have cancelled the contract if he had known a refund was not forthcoming.

Defendant testified he advised plaintiff to cancel the contract because of the delay and, because of the decreased value of the dollar, plaintiff would have had to pay $5,000 more for the car than he had anticipated. Neither counsel asked defendant if he had guaranteed plaintiff a refund, but defendant indicated after he cancelled plaintiff's order he requested Islinger refund plaintiff his $6,000. Defendant testified he received a check in deutsche marks made payable to

himself for approximately $3,200. Defendant then issued plaintiff a personal check for $3,100. Defendant said he has repeatedly attempted to obtain from Islinger the balance due plaintiff, but has been unsuccessful.

Plaintiff's initial complaint alleged defendant, an agent of Islinger, had refused to refund plaintiff's money after having failed to procure an automobile as promised. On April 3, 1987, a default judgment was entered against defendant. On May 15, 1987, defendant moved to vacate the default on the grounds that an agent for a disclosed principal cannot be liable for the principal's breach of conduct. On June 9, 1987, the court vacated the default judgment.

Plaintiff filed his first-amended complaint on June 29, 1987. As amended, the complaint contained three counts. Count I was for breach of an oral contract in that defendant failed to fulfill his promise to "procure" an automobile for plaintiff and refused to return plaintiff's money in full. Count II asked the trial court to declare the personal-service contract rescinded on the grounds of substantial nonperformance by defendant. Count III alleged the contract had already been mutually rescinded and requested the trial court to order that defendant pay plaintiff the balance due under the contract.

The service defendant was to provide was the procurement of an Audi for plaintiff at a substantial discount. The trial court found an essential term of the contract was that plaintiff's money would be refunded if the car deal fell through. The trial court refused to apply agency law. Rather, it found plaintiff and defendant had entered into an oral contract wherein defendant was to provide a personal service for plaintiff. The court found defendant had not breached his promise to procure an automobile for plaintiff. Relief was denied under count I because it was not defendant's fault the car order was cancelled.

The trial court declared the parties had mutually agreed to cancel the Audi order. The court also interpreted this as a rescission of the parties' contract. Upon rescission, the court found it necessary to restore the parties to their positions before the contract was entered into. Defendant was ordered to pay plaintiff $2,900 because of his promise to obtain a refund for plaintiff in the event there were problems with the car deal. Since problems arose and the deal had to be cancelled, the trial court found defendant liable on his promise to refund plaintiff's money.

■ Initially defendant argues the trial court erroneously determined a contract existed between plaintiff and defendant. "Whether an oral contract exists, its terms and conditions and the intent of the parties are questions of fact to be determined by the trier of fact."

(*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 427, 431 N.E.2d 738, 742.) The findings of the trier of fact will not be disturbed on appeal unless they are against the manifest weight of the evidence. *Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 15, 426 N.E.2d 824, 831.

■■ ■ The evidence supports the existence of an oral contract between the parties. Defendant admitted he contacted plaintiff and offered to help him procure an automobile from West Germany. On appeal defendant contends such a contract was not legally formed because valid consideration was not exchanged between the parties. Although plaintiff did not raise the waiver principle as to this point on appeal, careful examination of the record reveals defendant did not complain to the trial court that consideration for the agreement was lacking. The appellate court normally will not address an issue on appeal unless it was initially argued at trial. *Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 303, 443 N.E.2d 575, 577.

Assuming defendant had preserved this argument for appeal, it would fail for the reason that defendant received, from whatever source, $650 for his services. Since a third party may provide valid consideration (*Chonowski v. Dyke* (1980), 82 Ill. App. 3d 802, 403 N.E.2d 301), it matters not whether the money for defendant's services came from Islinger or plaintiff.

■ From the evidence at trial of the parties' conduct and their respective interpretations of their relationship, we cannot disagree with the trial court's conclusion defendant orally contracted to procure an Audi automobile for plaintiff from West Germany. Clearly the parties did not enter into a sales contract wherein plaintiff understood he was purchasing the car directly from defendant. Accordingly, we reject defendant's argument the contract is invalid for failure to comply with the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*).

The trial court found the contract between plaintiff and defendant was for services only and an essential element of the arrangement was for defendant to obtain a refund of plaintiff's money if there were problems obtaining the car. The evidence showed that due to delay, the parties mutually agreed defendant would cancel plaintiff's order for the car.

■ Defendant does not deny he told plaintiff a refund was possible upon cancellation of the order, rather he maintains it was solely Islinger's responsibility to pay plaintiff back. According to defendant, by holding him responsible for Islinger's debt, the trial court, in effect, made him a guarantor of that debt. A guaranty is a third par-

ty's promise to make payment on or fulfill an obligation if the person primarily liable fails to perform. (*McCracken v. Olson Cos.* (1986), 149 Ill. App. 3d 104, 500 N.E.2d 487.) Assuming defendant promised to cover the debt, defendant argues that promise is unenforceable because it was not in writing. *Rivenbark v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 346 N.E.2d 494.

■ Whether or not the order with Islinger was cancelled, the trial court apparently found the service contract between plaintiff and defendant remained valid to the extent defendant was responsible for obtaining plaintiff's refund. Plaintiff does not contend, nor did the trial court declare, defendant was a guarantor of the money owed by Islinger to plaintiff after the deal was cancelled. Defendant never promised to refund the money out of his own pocket. According to the trial court, he did, however, promise plaintiff a full refund.

The trial court is in the best situation to judge the credibility of the witnesses and a reviewing court will not substitute its judgment where evidence is merely conflicting. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) Here, plaintiff testified defendant guaranteed a full refund while defendant said he told plaintiff a refund was possible. Where an agreement is indefinite, the court will observe and adopt the construction which the parties, by their conduct, have placed upon the contract. (*Hodgman, Inc. v. Feld* (1983), 113 Ill. App. 3d 423, 447 N.E.2d 450.) By his repeated attempts to compel Islinger's payment, it is apparent defendant intended, and possibly expected, Islinger to refund all of plaintiff's money. Although it is unfortunate Islinger did not refund plaintiff in full, the fact remains defendant promised plaintiff he would get his money back if there were problems. By defendant's own admission, the delay in shipping the automobile was problematic. We agree that by the terms of the oral contract defendant owes plaintiff a refund, regardless of its source.

■ Finally, defendant argues the trial court improperly applied the equitable doctrine of rescission. Mutual consent of the parties is sufficient to terminate a contract. (*Volk v. Kendall* (1979), 71 Ill. App. 3d 211, 389 N.E.2d 697.) When a decision is unilaterally made to rescind a contract, the party demanding rescission must restore the other party to the status quo which existed at the time the contract was made. *Hakala v. Illinois Dodge City Corp.* (1978), 64 Ill. App. 3d 114, 380 N.E.2d 1177.

■ In this case, the trial court indicated that by ordering defendant to pay plaintiff $2,900, the parties would be restored to their precontract positions. Defendant contends this remedy is inequi-

table. Because defendant never had possession of plaintiff's money, such an order would not restore the status quo, rather it would deprive defendant of money out of his own pocket.

The precise holding of the trial court is unclear. Initially the trial court said:

> "And although I don't find any breach, intentional breach or whatever kind of breach, I do find that there was a mutual agreement to rescind it. Going back to the original terms of the contract, that being a promise to refund the money if there were any problems. And I take any problems as being even less significant than a breach. Under that, the terms of the agreement have to be abided by. And based on the mutual rescission, the plaintiff is entitled to have *** $2,900 returned."

When defense counsel pointed out the remedy of rescission was inappropriate because it held defendant liable for money that was in the hands of Islinger, the court replied:

> "[T]rying to put the parties in the position that they were originally, it can't be done, as you have pointed out, because someone is holding some extra money. But between these two parties, I think that Mr. Panno is entitled to have his money back because I think there was a contract, the terms being to refund the money if there is [sic] any problems at all."

While we are unsure whether the trial court granted plaintiff relief on the basis of the oral contract or on the theory of rescission, we agree the principle of rescission does not apply to the contract at issue in this case. Nevertheless, the end result is the same under either analysis.

The parties both testified they agreed it was both possible and a wise decision for plaintiff to cancel the order with Islinger for the Audi. We conclude it was the contract for the car from Islinger that was mutually rescinded, not the entire oral contract between plaintiff and defendant. Even if defendant had the authority to rescind the car order, the cancellation did not excuse him from his promise to obtain a refund of plaintiff's money. The trial court found it essential that defendant assured plaintiff he would receive a complete refund if he encountered difficulties with the car deal. Problems arose and plaintiff elected to cancel his order for the Audi. The fact defendant was unsuccessful in obtaining the entire balance from Islinger does not mean he can ignore his contractual obligation to plaintiff. Accordingly, we find defendant was properly found liable for the balance of the refund owed plaintiff, less the $650 service fee, on the

basis of his oral service contract with plaintiff, rather than on the principle of rescission.

For the foregoing reasons the judgment of the circuit court of Livingston County is affirmed.

Affirmed.

McCULLOUGH and SPITZ, JJ., concur.